**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Quantum Fluids LLC, | No. CV-20-02287-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Kleen Concepts LLC, | |
| Defendant. | |

**INTRODUCTION**

This case, which arises from a seemingly straightforward business dispute between Plaintiff Quantum Fluids LLC ("Quantum") and Defendant Kleen Concepts LLC ("Kleen"), has spawned a flurry of chaotic and procedurally irregular motions and litigation maneuvers.

Last year, when the dispute first arose, the parties appeared to be addressing it in a professional manner—their attorneys traded emails and discussed mediation. Things escalated, however, when Quantum sought a no-notice TRO against Kleen (even though the TRO request addressed one of the topics the parties were actively attempting to resolve informally). Separately, Kleen filed a motion to compel Quantum to arbitrate pursuant to the ADR clause in the parties' contract. And before that motion became fully briefed, Kleen initiated a parallel arbitration proceeding against Quantum, prompting Quantum to file a motion to stay that proceeding. What a mess.

Kleen's motion to compel and Quantum's motion to stay are now both fully briefed.

For the following reasons, the former is granted, the latter is denied, and this action is stayed pending the resolution of the arbitration proceeding.

## BACKGROUND

I.      <u>Underlying Facts</u>

Quantum and Kleen "do business in the antimicrobial sector." (Doc. 11 ¶ 7.) In July 2020, Quantum and Kleen entered into an agreement, the Master Supply Agreement ("MSA"), pertaining to the manufacture of hand sanitizer. (*Id.* ¶¶ 14-15, 17.) Under the MSA, Quantum would supply Kleen with a proprietary ingredient, Kleen would manufacture hand sanitizer by blending Quantum's proprietary ingredient with certain other raw materials, and Quantum would "be the labeler/relabeler responsible for the branding and marketing of" the resulting product. (*Id.*)

Under the MSA, Kleen was considered the "Seller" of the finished hand sanitizer and Quantum was considered the "Buyer." (*Id.* ¶ 18.) The contemplated purchase process was that Quantum would request a quote from Kleen, Kleen would provide a quote, and Quantum could then accept the quote by issuing a purchase order to Kleen. (*Id.* ¶ 19.)

The parties entered into four purchase orders. (*Id.* ¶ 22.) However, Kleen only completed delivery as to two of those orders. (*Id.*) When Quantum received those deliveries, it determined that the finished sanitizer "did not seem to conform with the parameters for the requested ethanol to be used." (*Id.* ¶ 25.) Quantum then conducted testing at a third-party laboratory, which allegedly "showed that the products were unfit to be marketed to, sold to or consumed by the purchasing public." (*Id.* ¶ 27.) When Quantum attempted to return the product, Kleen "instructed Quantum not to ship the goods back." (*Id.* ¶ 30.) Kleen also indicated that it would destroy the remaining raw materials in its possession. (*Id.* ¶ 32.)

…

…

…

…

II.   The MSA

The MSA contains a mediation and arbitration clause (the "ADR Clause") that provides as follows:

> Dispute Resolution.  In the event of any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity hereof (each, a "Dispute"), the parties hereto shall first attempt in good faith to resolve any Dispute by negotiation and consultation between themselves, including, without limitation, not fewer than three (3) negotiation sessions. If the parties hereto cannot resolve any Dispute after such negotiation sessions, either party may submit the Dispute to a mutually agreed mediation service for mediation administered in Scottsdale, Arizona by providing to the mediation service a joint, written request for mediation, setting forth the subject of the dispute and the relief requested.  The parties covenant that they will use commercially reasonable efforts in participating in the mediation.  If the parties hereto cannot resolve the dispute after sixty (60) days from the commencement of mediation, then either party may submit the Dispute to arbitration administered in Scottsdale, Arizona by the American Arbitration Association under its Commercial Arbitration Rules.  The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction.  Any breaching party shall be responsible for the attorneys' fees of the non-breaching party in any arbitration proceeding with respect to this Agreement.

(Doc. 1-2 at 8-9.)

III.   Pre-Litigation Correspondence

On October 23, 2020, Quantum's counsel sent an email to Kleen stating that Quantum was dissatisfied with the hand sanitizer that had been manufactured and delivered by Kleen.  (Doc. 8-1 at 8-9; Doc. 9-1 ¶ 17.)

That same day, a Kleen representative sent a response email defending the quality of the delivery and noting that Quantum had previously approved a sample.  (Doc. 8-1 at 8-9; Doc. 9-1 ¶ 19.)

On October 26, 2020, a Kleen representative sent another email that requested a response to certain questions by October 30, 2020.  (Doc. 8-1 at 7-9; Doc. 9-1 ¶ 20.)

On November 2, 2020, a Kleen representative sent an email stating that Kleen was interpreting Quantum's conduct as "effectively canceling" the outstanding orders that had

not yet been shipped.  (Doc. 8-1 at 7; Doc. 9-1 ¶¶ 21-22.)  This email further stated that Kleen was "currently incurring costs associated with this order including but not limited to storage fees" and thus asked Quantum to "let us know if you would like the purchased parts shipped to you (prepaid or Quantum arranged) as we will be moving forward with dispositioning the materials for this order starting November 5th 2020."  (*Id.*)

That same day, Quantum's counsel sent a response email that, among other things, requested that Kleen move the leftover materials to an off-site storage facility.  (Doc. 8-1 at 5-6.)

Between November 3-5, 2020, the parties exchanged additional emails.  (Doc. 8-1 at 2-5.)

On November 5, 2020, Quantum's counsel sent an email stating that "Quantum is no longer willing to engage in this continued exchange of emails with Kleen" because "it is obvious that our attempts at good-faith negotiation and consultation have proven unsuccessful."  (Doc. 8-1 at 2; Doc. 9-1 ¶ 24.)  The email continued: "Under Section 12.15 of the MSA, the next step is for both parties to submit the matter to a mutually-agreed mediation service."  (*Id.*)

On November 9, 2020, Kleen's counsel sent a response email verifying that "Kleen hereby joins in Quantum's request to submit the parties' dispute to a mutually agreed mediation service for mediation administered in Scottsdale, Arizona" and identifying, by name, three proposed mediators.  (Doc. 8-2 at 2-3; Doc. 9-1 ¶ 25.)

That same day, Quantum's counsel sent a response email that expressed appreciation for "Kleen's cooperation on this matter," stated that Quantum "look[ed] forward to reaching a mutually-beneficial resolution," and clarified that Quantum would be proposing its own list of mediators "in the next few days."  (Doc. 8-1 at 2.)

Between November 17-23, 2020, the parties' counsel engaged in additional email and telephonic correspondence about the dispute.  (Doc. 1-2 at 12-13; Doc. 9-1 ¶¶ 26-30.)

On November 23, 2020, Kleen's counsel sent an email stating that Kleen would dispose of the remaining materials unless Quantum paid the outstanding balance for the

cancelled orders.  (Doc. 1-2 at 11; Doc. 9-1 ¶ 32.)

IV.     Procedural History

On November 24, 2020, Quantum initiated this action by filing a complaint (Doc. 1) and requested a no-notice TRO to prevent Kleen from destroying the materials (Doc. 2).

On November 25, 2020, the Court ordered Quantum to file an amended complaint properly alleging the parties' citizenship.  (Doc. 6.)  The Court ordered the Clerk of Court to dismiss this case for lack of subject matter jurisdiction if Quantum failed to timely file an amended complaint.  (*Id.*)  Kleen's counsel appeared later that day.  (Doc. 7.)

On November 30, 2020, Kleen filed a motion to compel mediation and arbitration and to dismiss the complaint.  (Doc. 8.)

On December 1, 2020, Kleen filed a response to Quantum's TRO request.  (Doc. 9.)

That same day, the Court issued an order noting that Quantum "still ha[d] not filed an amended complaint containing allegations sufficient to establish subject matter jurisdiction" and that "the Court remain[ed] without authority to take action."  (Doc. 10.) The Court "encourage[d] the parties to meet and confer before taking future action, particularly in light of [Kleen's] contention that [Quantum's] claims are subject to mediation and arbitration."  (*Id.*)

On December 3, 2020, Quantum filed an amended complaint.  (Doc. 11.)

On December 4, 2020, the Court held a hearing on Quantum's TRO request.  (Doc. 13.)  The Court denied Quantum's request but ordered Kleen to provide notice to Quantum at least 72 hours before destroying the raw materials at issue.  (*Id.*)  At the hearing, both parties suggested that they were willing to consider proceeding to arbitration, prompting the Court to note that, if the parties decided to go that route, they could file a joint statement that the motion to compel arbitration could be granted.

On December 15, 2020 (and unbeknownst to the Court), Kleen initiated arbitration proceedings by submitting a demand to the American Arbitration Association ("AAA"). (Doc. 19-1 at 2.)

On December 16, 2020, the Court issued an order noting that Quantum had failed

to timely respond to Kleen's motion to compel and clarifying that Kleen's motion would be summarily granted unless Quantum filed a response by the close of business on December 17, 2020.  (Doc. 16.)

On December 17, 2020, Quantum filed a response.  (Doc. 18.)

On December 18, AAA notified the parties that it would be initiating arbitration proceedings.  (Doc. 19-1 at 1-2.)

On December 21, 2020, Quantum filed a motion to stay the arbitration proceedings. (Doc. 19.)

On December 23, 2020, Kleen filed a reply in support of its motion to compel.  (Doc. 20.)

On January 4, 2021, Kleen filed a response to Quantum's motion to stay.  (Doc. 22.)

On January 6, 2020, AAA notified the parties of its awareness that the issue of arbitrability had been raised in this Court, stated that it would "abide by any court order," and clarified that the parties could either "agree to await the court's ruling or, absent agreement, the issue would go to the arbitrator if filing requirements are met."  (Doc. 26-1 at 79.)

On January 11, 2021, Quantum filed a reply in support of its motion to stay.  (Doc. 25.)

On January 13, 2021, the Court struck Quantum's reply because it exceeded the 11-page limit for replies.  (Doc. 25.)  The Court permitted Quantum to re-file a compliant brief by January 15, 2021.  (*Id.*)

On January 15, 2021, Quantum filed a reply within page limits.  (Doc. 26.)[1]

…

…

…

…

---

[1]     Quantum requested oral argument in its motion to stay (Doc. 19) but this request is denied because the issues are fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b) (courts may decide motions without oral hearings); LRCiv 7.2(f) (same).

**DISCUSSION**

I.   <u>Legal Standard</u>

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce."  9 U.S.C. § 2.  The parties do not appear to dispute that the FAA applies to the MSA.

The FAA provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id.*  Thus, absent a valid contractual defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis omitted).

In general, a district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  These two issues are sometimes referred to as the "gateway" questions of arbitrability.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Although the gateway questions are ordinarily resolved by the court, the parties may agree to arbitrate one or both of the gateway issues by including a delegation clause in the arbitration agreement.  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Id.* at 70.  The evidence of the parties' intent to delegate such issues to the arbitrator must be "clear and unmistakable."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

II.   <u>Analysis</u>

Kleen seeks to compel arbitration of Quantum's claims while Quantum seeks to stay the parallel arbitration proceeding that has now been initiated by Kleen.  In a nutshell, Quantum seeks to avoid arbitration because (1) the MSA is unconscionable (or otherwise

unenforceable) and (2) Kleen has failed to go through all of the ADR Clause's antecedent steps to arbitration (*i.e.*, negotiation and then mediation). Kleen, on the other hand, argues that the ADR Clause delegates all arbitrability questions to the arbitrator and that Quantum has waived its ability to avoid arbitration.

As explained below, the Court agrees with Kleen that the ADR Clause delegates arbitrability questions to the arbitrator and will thus compel arbitration.

### A.   Whether This ADR Clause Is Mandatory

A threshold issue implicated by the parties' motions is whether the ADR Clause in this action is mandatory, in the sense that it may be invoked by one party to compel the other to participate in the ADR process. This issue arises due to the somewhat unusual wording of the ADR Clause—it does not mandate binding arbitration, but instead provides that either party "may" submit the dispute to mediation and, if that fails, then either party "may" submit the dispute to binding arbitration. (Doc. 1-2 at 8-9.) Kleen argues the ADR Clause is nevertheless mandatory. (Doc. 8 at 7 n.4.) Although Quantum does not seem to dispute this point—as noted, Quantum's primary defenses are that the MSA is unenforceable and/or that Kleen hasn't satisfied all of the ADR Clause's prerequisites to arbitration—the Court will clarify that Kleen's interpretation is correct. The ADR Clause does, in fact, potentially permit one party to compel the other to arbitrate. *See, e.g.*, *Am. Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1104 (8th Cir. 1990) (granting motion to compel arbitration, where agreement provided that "[i]f both parties agree that a dispute . . . cannot be settled . . . , then such dispute or disagreement may be submitted to arbitration," because "[t]here would be no reason for the arbitration language . . . if the parties intended it to be permissive"); *Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418, 421 (5th Cir. 1962) ("Appellant argues that the use of the word 'may' in the contract prevents arbitration from being compulsory or obligatory. Clearly, however, 'may' should be construed to give either aggrieved party the option to require arbitration."); *Realty Execs. Int'l Servs. LLC v. Devonshire W. Can. Ltd.*, 2019 WL 4259767, *1-2 (D. Ariz. 2019) ("REI also argues that the arbitration provision [requiring informal discussion,

mediation, and binding arbitration] is not mandatory because it states that 'either party *may* submit' to arbitration.  But this merely means that the parties are not required to arbitrate every dispute—they may choose to forego resolution of some disagreements.  But if either side seeks to assert a claim arising out of or related to the 2003 Agreement, the arbitration provision is 'the sole and exclusive procedure[] for the resolution of disputes.'") (alterations in original) (citation omitted).

## B.   Delegation Of Gateway Questions

As noted, although the two gateway questions of arbitrability—(1) whether a valid agreement to arbitrate exists and (2) whether the agreement encompasses the dispute at issue—are ordinarily resolved by the court, the parties may agree to arbitrate one or both of those issues by including a delegation clause in the arbitration agreement.  *Rent-A-Center,* 561 U.S. at 68-70.  Here, the parties disagree about whether the ADR Clause delegates those questions.  Kleen argues that, because the ADR Clause incorporates the AAA Commercial Arbitration Rules, the parties agreed to arbitrate the gateway questions. (Doc. 20 at 3-5; Doc. 22 at 2-3.)  Quantum responds that the Court, not an arbitrator, must decide the gateway questions because the MSA is unconscionable and was fraudulently induced (Doc. 18 at 6-8, 11-13; Doc. 26 at 7) and because the ADR Clause does not clearly and unmistakably delegate arbitrability to an arbitrator (Doc. 26 at 6-12).

As an initial matter, the Court must determine whether it can consider Kleen's delegation argument.  Kleen first raised the issue of delegation in its reply in support of its motion to compel.  (Doc. 20 at 3-5.)  This was arguably too late.  *Collaborative Continuing Educ. Council, Inc. v. Starks Realty Grp., Inc.*, 2017 WL 5714727, *1 (D. Ariz. 2017) ("Generally, this Court will not consider arguments raised for the first time in a reply. There are some exceptions to this general rule, including replies to arguments presented by opposing counsel in their response.") (citations omitted).  However, Kleen also raised the issue of delegation in its response to Quantum's motion to stay (Doc. 22 at 2-3), and Quantum thereafter had the opportunity to—and did—respond to the argument (Doc. 26 at 6-12).  Accordingly, and given the intertwined nature of the parties' motions, the delegation

1    issue is properly before the Court.  *Cf. Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th

2    Cir. 1990) (court may consider issue first raised in reply brief if "the appellee has not been

3    misled and the issue has been fully explored") (internal quotation marks omitted).

4            On the merits, the Court agrees with Kleen that the ADR Clause's incorporation of

5    the AAA Commercial Arbitration Rules constitutes a clear and unmistakable expression of

6    the parties' intent to delegate the gateway questions to an arbitrator.  Although Quantum

7    urges the Court to reach a different conclusion for policy reasons, because "following such

8    a rule (the 'Arbitral Incorporation Rule') would reach an obscene and unjust result" (Doc.

9    26 at 6), it is not this Court's job to make such freewheeling policy judgments.  Instead,

10   this Court must follow Ninth Circuit law, which firmly establishes that "incorporation of

11   the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed

12   to arbitrate arbitrability."  *Brennan*, 796 F.3d at 1130-31.  *See also Oracle Am., Inc. v.*

13   *Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have

14   considered the issue has determined that incorporation of the [AAA] arbitration rules

15   constitutes clear and unmistakable evidence that the parties agreed to arbitrate

16   arbitrability.").  Quantum also cites cases for the proposition that "a bare reference to the

17   AAA rules is insufficient to establish delegation" (Doc. 26 at 9-10), but the parties' contract

18   does not contain a "bare reference" to the AAA rules—it expressly adopts and incorporates

19   them.  *Cf. Brennan*, 796 F.3d at 1128 (contract language that disputes would be settled "by

20   binding arbitration in accordance with the Rules of the [AAA]" incorporated the AAA

21   Rules).[2]  Finally, Quantum also notes that some courts have "reserved judgment on the

22   question whether the incorporation rule applied to contracts involving unsophisticated

23   parties" (Doc. 26 at 11), but those cases generally involved individual consumers.

24   Quantum has not explained, other than by *ipse dixit*, how a commercial hand sanitizer

25   _____

26   [2]       The Ninth Circuit recently decided there was not "clear and unmistakable evidence
     that the parties intended to delegate [a] gateway issue" when "arbitration before the AAA
27   [was] but the final option in the dispute procedure that the Clause outline[d]."  *Shivkov v.*
     *Artex Risk Sols., Inc.*, 974 F.3d 1051, 1069 (9th Cir. 2020).   *Shivkov* is easily
28   distinguishable because the clause in that case did "not incorporate the AAA Rules," so the
     rule set out in *Brennan* did not apply.  *Id.* at 1068.  As noted, the ADR Clause here expressly
     incorporates the AAA Rules.

distributor that has entered into six-figure commercial transactions could be deemed an unsophisticated party.  In any event, the Ninth Circuit has "not foreclose[d] the possibility that this rule could also apply to unsophisticated parties or to consumer contracts.  Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Brennan*, 796 F.3d at 1130-31.

Alternatively, Quantum requests a stay pending the Supreme Court's decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 19-963, which Quantum argues will rule on an "almost identical issue to the one at bar." (Doc. 26 at 8.)  But earlier today, the Supreme Court dismissed the grant of certiorari in *Henry Schein* as improvidently granted.[3]

Because the parties agreed to delegate the gateway questions, it follows that Quantum cannot avoid arbitration based on its claims of unconscionability and fraud in the inducement.  "There are two types of validity challenges under [9 U.S.C.] § 2: One type challenges specifically the validity of the agreement to arbitrate, and [t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Center*, 561 U.S. at 70 (second alteration in original) (internal quotation marks omitted).  "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.*  The Supreme Court "require[s] the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene," so "unless [Quantum] challenged the [ADR Clause] specifically, [the Court] must treat it as valid

---

[3] Even if the Supreme Court hadn't taken this step, Quantum's request for a stay would have been denied.  The narrow question on which the Supreme Court originally granted certiorari in *Henry Schein* was "[w]hether a provision in an arbitration agreement that exempts certain claims from arbitration negates an otherwise clear and unmistakable delegation of questions of arbitrability to an arbitrator," Brief for Petitioner at (I), *Henry Schein*, No. 19-963, 2020 WL 529195, *I (January 2020).  But the ADR Clause in this case doesn't contain such a carve-out—it applies without qualification to "any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity hereof." (Doc. 1-2 at 8-9.)

under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 71-72.

Here, Quantum's claims of unconscionability are directed to the MSA as a whole, not to the ADR Clause specifically.  In the FAC, Quantum alleges that the "*MSA was entirely one-sided to the extent that it is and was unconscionable*" and that the "*MSA was so one-sided, it was void ab initio*."  (Doc. 11 ¶¶ 35-36, emphases added.  *See also id.* ¶ 55 ["Kleen drafted an imbalanced contract . . . ."].)  Quantum then clarifies that its claim of unconscionability is premised on the following "three instances in which the contract was imbalanced . . . creating an unconscionable agreement": (1) "section 7.3 makes the buyer responsible for all defects in the certificate of analysis even when the seller is providing the raw materials"; (2) "Section 4.3 gives seller sole discretion to determine if goods are non-conforming"; and (3) "Section 8.1 severely limits the warranty on goods manufactured by seller so that the buyer has no protection."  (*Id.* ¶ 54.)  None of those challenges is directed toward the ADR Clause specifically—instead, they represent theories for challenging the validity of the overall contract.  Finally, Quantum's arguments in its briefing[4] again concern the MSA as a whole: "Defendant's *MSA* is both procedurally and substantively unconscionable and the entire Dispute Resolution/arbitration provision should be deemed enforceable *as well*."  (Doc. 18 at 12, emphases added.)

Similarly, as for Quantum's fraud in the inducement argument, Quantum argues it was "coerced into a *business deal* with Defendant that it never intended to consummate."  (*Id.* at 13, emphasis added.)  Once again, these arguments do not challenge the ADR Clause specifically, so the validity of the MSA is a gateway question that has been delegated to

---

[4]      Quantum's briefing does mention the ADR Clause on a few occasions, but nowhere does Quantum assert a challenge to the ADR Clause divorced from its challenge to the MSA.  (Doc. 18 at 12 ["[T]he first Purchase Order was bottled and shipped to Quantum prior to execution of the *MSA*.  The *MSA* was sent via docusign to Quantum for signature, after the parties had been operating in business with no conversation regarding arbitrability.  Thus, the arbitration agreement is procedurally unconscionable."], emphases added.)  In other instances, Quantum does not make specific challenges at all, instead choosing to make conclusory assertions: "Some arbitration clauses may contain terms that are 'bizarre or oppressive . . . .'  Kleen's Dispute Resolution clause is not run-of-the-mill.  As discussed above [in relation to the MSA], it is so one-sided as to be substantively unconscionable."  (*Id.* at 12-13, citation omitted.)

the arbitrator.  *Cf. Rent-A-Center*, 561 U.S. at 73 ("[W]e need not consider [the unconscionability] claim because none of Jackson's substantive unconscionability challenges was specific to the delegation provision.  First, he argued that the Agreement's coverage was one sided . . . .  This one-sided-coverage argument clearly did not go to the validity of the delegation provision."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) ("To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract . . . .").[5]

Finally, Quantum's response to the motion to compel contains a passing argument that "this action is outside of the arbitration agreement because it arises from (1) breaches of Federal Regulations and (2) consumer protection laws, not from disputes arising from the MSA itself."  (Doc. 18 at 8.)  And in its motion to stay, Quantum argues that its claims in this action aren't governed by the ADR Clause because the MSA "was not even signed prior to the execution of three (3) of the four (4) purchase orders at issue."  (Doc. 19 at 3, formatting omitted).  These arguments fail because they implicate the second gateway question (*i.e.*, whether the agreement encompasses the dispute at issue) and the parties have agreed to delegate that issue to the arbitrator, too.

## C.   Failure To Satisfy Contractual Prerequisites To Arbitration

Quantum also contends that Kleen cannot compel arbitration because it skipped "the mandatory steps outlined in its own Dispute Resolution clause."  (Doc. 18 at 8.)  Kleen

---

[5]   Quantum also contends that, because it has "raised the fact issues of unconscionability and fraud in the inducement with regard to the MSA, it is entitled to at least limited discovery to either determine the issue on summary judgment or at trial" under 9 U.S.C. § 4.  (Doc. 18 at 10-11.)  This argument lacks merit.  Under the FAA, if "the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4.  "As the party resisting arbitration, [Quantum] has the burden of showing that [it] is entitled to a jury trial under § 4 . . . ."  *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987).  *See also Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("A party to an arbitration agreement cannot obtain a jury trial merely by demanding one.").  Quantum has not met this burden because, as discussed above, Quantum has not put the making of the ADR Clause itself at issue—Quantum more broadly challenges the MSA.  This issue is arbitrable, which means Quantum is not entitled to a trial under § 4.  *Bhatia*, 818 F.2d at 422 ("[T]he Supreme Court's holding in *Prima Paint* dictates that Bhatia's claim that the contract itself is invalid must be referred to arbitration.").

responds that it has "diligently sought to negotiate and mediate this matter but to no avail" and that it was "Quantum who has waived any opposition to arbitration" by "affirm[ing] the enforceability of the arbitration provisions of the MSA in its complaints" and leading "the Court and Kleen to believe that it was agreeable to arbitration during the TRO hearing."  (Doc. 20 at 5.)

The Court need not decide whether Kleen satisfied, or should be excused from satisfying, all of the ADR Clause's prerequisites to arbitration (*i.e.*, engaging in at least three negotiation sessions and then engaging in mediation) because that issue has been delegated to the arbitrator to decide in the first instance.[6]  The Ninth Circuit has held that the "question whether a party waived its right to arbitrate on the basis of its litigation conduct is a question of arbitrability and is in the first category of gateway issues." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016).  Although the Ninth Circuit has also stated that this question is "presumptively for a court and not for an arbitrator to decide," *id.*, "[c]ourts distinguish between waiver-through-conduct, which may be considered by a court, and contractual waiver, which is presumptively for the arbitrator.  Contractual waiver concerns whether the party seeking to arbitrate waived its right to insist on arbitration by failing to satisfy contractual prerequisites to arbitration.  Waiver-through-conduct concerns whether the party seeking to enforce arbitration acted in a manner 'completely inconsistent' with the right to arbitrate." *Altela Inc. v. Ariz. Sci. & Tech. Enters. LLC*, 2016 WL 4539949, *5 n.3 (D. Ariz. 2016) (citations omitted).

Here, Quantum's argument is best categorized as a contractual waiver argument. Quantum argues that Kleen cannot pursue arbitration because it "skipp[ed] the mandatory steps outlined in its own Dispute Resolution clause."  (Doc. 18 at 8-10.  *See also* Doc. 26 at 7 ["Kleen did not engage in the three negotiation sessions outlined in the MSA despite

---

[6]      Although neither party addressed the delegation issue specifically as it pertains to compliance with the ADR Clause's negotiation and mediation requirements, Kleen did argue that the delegation provision "delegated *all* questions of arbitrability . . . to the arbitrator" and that the incorporation of the AAA Rules meant that the "parties delegated the 'gateway' questions of arbitrability to the arbitrator, not the court."  (Doc. 22 at 2, emphasis added.)

- 14 -

Quantum's requests to do so, [and] did not submit the dispute to a mediator . . . .  Quantum has objected from the outset to Kleen's complete disregard for the process it outlined in the MSA and its arbitration clause."].)  Because this argument relies on Kleen's alleged failure to "satisfy contractual prerequisites" (three negotiation sessions and then mediation) and is not based on Kleen's actions in litigation, it is presumptively one for the arbitrator and is a question of arbitrability that has been delegated to the arbitrator.  *Mitchell v. Corelogic, Inc.*, 2019 WL 6481306, *3-4 (C.D. Cal. 2019) (holding that a contract containing an arbitration clause incorporating AAA rules was "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," so the "arbitrator [had] to determine whether CoreLogic has waived arbitrability"); *Bank Leumi, USA v. Miramax Distrib. Servs., LLC*, 2018 WL 7568361, *7 n.6 (C.D. Cal. 2018) (concluding that *Martin* was limited to waiver-by-conduct and holding that an agreement "gave the arbitrator authority to determine questions of arbitrability based on the broad language of the arbitration agreement and the incorporation by reference of the AAA rules").  *See also* AAA, *Commercial Arbitration Rules and Mediation Procedures* (Oct. 2013), https://adr.org/sites/default/files/Commercial%20Rules.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction, including . . . the *arbitrability* of any claim or counterclaim.") (emphasis added).

### D.   **Whether To Stay Or Dismiss The Action**

When compelling arbitration, a court must decide whether to stay or dismiss the underlying action.  *Johnmohammadi v. Bloomingdales, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).  Kleen seeks dismissal because all of Quantum's claims are subject to arbitration.  (Doc. 20 at 6-7.)[7]  Quantum prefers a stay.  (Doc. 18 at 14.)

The Court will exercise its discretion to stay proceedings pending a final decision

---

[7]      Quantum also requests leave to add allegations and counts to its complaint.  (Doc. 18 at 14-15.)    Because the arbitrability of all of Quantum's claims—including the additional claims it would like to assert—have been delegated to the arbitrator, Quantum's request is denied.  *Realty Execs.*, 2019 WL 4259767, at *2 (stating that the Court "may deny leave to amend if the new claims are subject to arbitration" and collecting cases).  "If [Quantum] seeks to assert claims arising out of or related to [the MSA], it must do so under the process established in that agreement."  *Id.*

by the arbitrator because the "arbitration provision delegates the gateway question of arbitrability to the arbitrator," so "if the arbitrator decides that not all of Plaintiff's claims are subject to arbitration, then this litigation can proceed in this Court on those non-arbitrable claims." *ROI Props. Inc. v. Burford Cap. Ltd.*, 2019 WL 1359254, *7 (D. Ariz. 2019).

Accordingly,

**IT IS ORDERED** that:

(1)     Kleen's motion to compel arbitration (Doc. 8) is **granted**.

(2)     Quantum's motion to stay arbitration proceedings (Doc. 19) is **denied**.

(3)     This action is **stayed** pending arbitration.

(4)     The parties must file a joint notice every six months concerning the status of the arbitration proceeding and file a joint notice within 10 days of when the arbitration proceeding concludes.  The first joint notice shall be filed six months from the date of this Order.

Dated this 25th day of January, 2021.

Dominic W. Lanza
United States District Judge